UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHAWN ARFLACK, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:19-CV-2959 SRW |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 19. Defendant filed a Brief in Support of the Answer. ECF No. 20. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.      Factual and Procedural Background**

On December 28, 2015, Plaintiff Shawn Arflack protectively filed an application for supplemental security income under Title XVI, 42 U.S.C. §§ 1381, *et seq.*, and on January 8, 2016, he filed an application for disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq*. Tr. 150-64. Plaintiff's application was denied on initial consideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 95-103.

Plaintiff and counsel appeared for a hearing on February 22, 2018. Tr. 36-63. Plaintiff testified concerning his disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") Darrell W. Taylor, Ph.D. *Id*. On June 29, 2018, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 15-30. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. On September 3, 2019, the Appeals Council denied Plaintiff's request for review as untimely and found no good cause to extend the time for filing. Tr. 1-14. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

**II.     Legal Standard**

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the

claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016).

3

Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3) (emphasis added). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th

Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III.     The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date of December 31, 2011. Plaintiff has the severe impairments of "left hip posttraumatic degenerative changes status post open reduction and internal fixation, lumbar degenerative joint disease, minimal spondylosis of the thoracic spine, major depressive disorder, generalized anxiety disorder, agoraphobia with panic disorder, bipolar disorder, and posttraumatic stress disorder." Tr. 21. Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.* The ALJ found Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift up to 20 pounds occasionally; lift and carry up to 10 pounds frequently. He can stand and/or walk for about 2 hours and sit for 6 hours in an 8-hour workday, with normal breaks. He can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. He should avoid exposure to operational control of moving machinery, unprotected heights and hazardous machinery. His work is limited to simple, routine and repetitive tasks. He should have only occasional interaction with the public. He should have only occasional interaction with co-workers and supervisors.

Tr. 21-25. At Step Four, the ALJ found that Plaintiff was unable to perform his past relevant work. Tr. 28. The ALJ further found Plaintiff was born on March 24, 1975 and was 36 years old

on the alleged disability onset date, which is defined as a younger individual age 18-49. *Id*. Plaintiff has at least a high school education and is able to communicate in English. Tr. 21. The ALJ determined the transferability of job skills was not material to the determination of disability because, using the Medical-Vocational Rules as a framework, it supported a finding that the claimant was "not disabled," whether or not the claimant had transferable job skills. *Id*. At Step Five, relying on the testimony of the VE and considering Plaintiff's age, education, work experience and RFC, the ALJ found that there were jobs existing in significant numbers in the national economy which the Plaintiff could perform, including representative occupations such as Hand Packer (*Dictionary of Occupational Titles* ("*DOT*") No. 559.687-014); Production Worker, Assembler (*DOT* No. 739.687-066); and Inspector/Tester Sorter (*DOT* No. 521.687-086). Tr. 29. The ALJ concluded Plaintiff was not under a disability from December 31, 2011, through the date of his decision on June 29, 2018. Tr. 29.

**IV.    Discussion**

Plaintiff first argues the Appeals Council should not have dismissed his request for review as untimely. Plaintiff also challenges the ALJ's decision on two grounds: (1) the RFC determination was conclusory and not based upon some medical evidence; and (2) the ALJ improperly discredited Plaintiff's subjective complaints of pain. ECF No. 19. For the following reasons, the Court finds Plaintiff's arguments to be without merit as the ALJ's decision is based on substantial evidence and is consistent with the Social Security Administration Regulations and case law.

**A.  Appeals Council Request for Review**

On June 29, 2018, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 15-30. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. On

September 3, 2019, the Appeals Council denied Plaintiff's request for review as untimely and found no good cause to extend the time for filing. Tr. 1-14. The Appeals Council order stated:

> The request for review filed on July 29, 2019, was not filed within 60 days from the date notice of the decision was received as required by 20 CFR 404.968(a) and 416.1468(a). The date of receipt of such notice is presumed to be five (5) days after the date of such notice unless a reasonable showing to the contrary is made.
>
> The regulations provide that the Appeals Council may dismiss a request for review where the claimant has failed to file the request within the stated period of time and the time for filing has not been extended (20 CFR 404.971 and 416.1471). The time period will be extended if good cause is shown for missing the deadline (20 CFR 404.968(b) and 416.1468(b)).
>
> The claimant's representative alleges that he timely faxed a request for review on June 29, 2018, at the same time that he submitted his entry of appearance form. However, in a notice dated August 18, 2018, the Social Security Administrative ("SSA") notified the representative that the appointment of representative form was being returned to him as there was no matter pending with SSA for the claimant at that time, which should have alerted the representative that the request for review had never been received; however, the representative waited for almost one year to follow up with the SSA. On August 2, 2019, the representative submitted what he said was proof of the earlier timely filing, but the document does not contain any indication that it was actually submitted electronically.
>
> The Appeals Council, therefore, finds that there is no good cause to extend the time for filing and, accordingly, dismisses the claimant's request for review.

Tr. 4.

In the instant action, Plaintiff filed a Brief in Support of Complaint stating: "It is the plaintiff's position that the Request for Review was filed timely and 'Good Cause' was not necessary. We believe the Appeals Council should have issued a decision rather than a dismissal." ECF No. 19 at 3. Plaintiff provides no additional information regarding his alleged timely filing or any argument in support of his position. Although Plaintiff avers his written request for Appeals Council review was timely filed, the Commissioner nevertheless determined Plaintiff's request to be untimely, and further, that Plaintiff failed to show good cause for his untimeliness. "The Appeals Council's resulting dismissal of plaintiff's request for review is not

7

subject to judicial review." *Martin v. Astrue*, No. 4:08-CV-1011-FRB, 2009 WL 1259243, at *3 (E.D. Mo. May 5, 2009) (citing 20 C.F.R. §§ 404.972, 416.1472). As such, this Court does not have the authority to review the Appeal Council's denial.

Additionally, even if this Court had the authority to review the Appeals Council's dismissal for untimeliness, Plaintiff made no attempt to develop his argument on this point past a conclusory statement that the Appeals Council was wrong. As such, this Court would be under no obligation to consider the issue further. *See Lovan v. Astrue*, No. 4:10-CV-1491-JCH-FRB, 2011 WL 3648274, at *22 (E.D. Mo. July 6, 2011), report and recommendation adopted, No. 4:10-CV-1491 JCH, 2011 WL 3648623 (E.D. Mo. Aug. 18, 2011) (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (collecting cases holding that merely perfunctory, undeveloped arguments are deemed waived)).

### B. RFC Determination

The ALJ determined Plaintiff had the RFC to perform light work with specific additional postural, environmental, and mental limitations. Tr. 24-25. Plaintiff argues the ALJ's RFC determination was conclusory because it improperly drew inferences from the medical record and relied on opinions of non-treating, non-examining medical consultants. Specifically, Plaintiff argues the ALJ's RFC determination was not consistent with the March 2016 examination report by consulting examining physician, Dr. Leung; incorrectly relied on Plaintiff's completion of probation; and improperly determined Plaintiff did not require leg elevation throughout a workday.

The "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-

related physical and mental activities." SSR 96-8p, 1996 WL 374184 (July 2, 1996). "[A] claimant's RFC [is] based on all relevant evidence, including the medical records, observations by treating physicians and others, and an individual's own description of his limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (quotation and citation omitted). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). Nonetheless, there is no requirement that an RFC finding be supported by a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Additionally, an ALJ is not limited to considering only medical evidence in evaluating RFC. *Cox*, 495 F.3d at 619; *see also Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam) ("To the extent [plaintiff] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). The ALJ may consider a plaintiff's daily activities, subjective allegations, and any other evidence of record when developing the RFC. *Hartmann v. Berryhill*, No. 4:17-CV-002413-SPM, 2018 WL 4679737, at *6 (E.D. Mo. Sept. 28, 2018) (citing *Cox*, 495 F.3d at 619-20). Although the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. *Cox*, 495 F.3d at 620; 20 C.F.R. §§ 416.927(e)(2), 416.946.

Plaintiff bears the burden of proving his RFC. *See Moore*, 572 F.3d at 523. Ultimately, the plaintiff is responsible for providing evidence relating to his RFC, and the Commissioner is responsible for developing the plaintiff's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the plaintiff] get medical reports from [the plaintiff's] own medical sources." *Turner v. Saul*, No.

4:18-CV-1230-ACL, 2019 WL 4260323, at *8 (E.D. Mo. Sept. 9, 2019) (quoting 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)).

In determining Plaintiff's RFC, the ALJ acknowledged that he was "badly injured" from a motor vehicle accident in 1996, but his earning records reflected he "returned to full time work in 1998 and worked steadily through 2010." Tr. 25, 180-89. The ALJ then referenced the medical record and noted it was "missing some indication of how [Plaintiff's] health has changed from the time he performed full time work lasting for over twelve years after the accident to present." Tr. 26. Due to the lack of medical evidence, the ALJ noted there was "no indication his condition was any different from his condition when he worked." *Id.* To support this statement, the ALJ cited to Plaintiff's imaging examinations which showed "modest degenerative changes to his spine, with no indication of weakness, sensory loss or reflex loss[.]" Tr. 21, 344-54. The ALJ found these records to be inconsistent with disabling impairments and supported Plaintiff's ability to ambulate effectively. Although the ALJ did not expressly cite to the December 21, 2017 treatment note from Phelps County Regional Medical Center, which reported Plaintiff to have "no significant [hip] change[s]" from December 2, 2015 to October 9, 2017, it provides additional evidence that the medical record does not support debilitating degenerative changes. Tr. 638

The ALJ further determined Plaintiff was not required to elevate his leg throughout an 8-hour workday. Tr. 26-27. This conclusion is also supported by the medical record. Plaintiff testified he would typically elevate his leg in the morning to reduce swelling in his left foot. Tr. 46. He would elevate it for 45 minutes to two hours and "maybe probably at least once or twice a day." Tr. 46-47. The record is void of any explicit directive from a physician requiring him to elevate his extremities for any specific time period. Nor is there evidence supporting Plaintiff's

10

claim he would need to elevate the left foot during the working day. The only record mentioning leg elevation, which the ALJ acknowledged, was a one sentence note from Nurse Practitioner Tammy Watz, dated February 27, 2018. This note was written five days after the hearing and approximately fourteen months after the last date Plaintiff was insured, December 31, 2106. Tr. 19.

NP Watz's note states Plaintiff "*may* need to elevate his left leg intermittently due to swelling." Tr. 943 (emphasis added). Additional medical records from NP Watz indicate, however, that she does "not treat chronic pain," and Plaintiff must consult his pain management physicians for "evaluation and treatment" of his left hip pain. Tr. 375, 380. The ALJ also considered Plaintiff's pain management treatment notes, which included a sacroiliac joint injection on December 21, 2017 and prescription pain medication. Tr. 26, 637-42.

The ALJ further considered evidence of Plaintiff's ability to drive, clean, shop, read, wash dishes, do laundry, prepare meals, care for pets, play games, use the internet, handle his own medical care, lift up to twenty pounds, stand for sixty minutes at a time, get along with his girlfriend and other friends, deal appropriately with authority, live with others, and maintain a good rapport with medical providers. Tr. 23-26. The ALJ cited Plaintiff's statement that he would live on his own if it were affordable and that he successfully completed probation for a 2011 criminal charge. Tr. 24. The ALJ noted that although Plaintiff reported difficulties changing, dressing, and bathing, treatment notes from examining physicians described him with "appropriate grooming and hygiene." *Id.* The medical record overwhelmingly supports these conclusions.

As for his mental impairments, the ALJ considered a May 13, 2016 record from Elissa Lewis, Ph.D., a Disability Determination Services psychologist, who determined Plaintiff did not

11

have a severe mental impairment with no more than mild limitations in any area of functioning. Tr. 22, 69-76. The ALJ assigned little weight to Dr. Lewis's opinion because additional medical records were received after she formulated her opinion and those records showed Plaintiff's impairments were more severe than indicated in the report. Tr. 27. The ALJ considered treatment notes from Plaintiff's treating psychiatrist Dr. Crane who reported Plaintiff had essentially a stable mood and non-severe sleep issues; treatment notes from Pathways Behavioral Health indicating intermittent medication compliance; and an August 16, 2018 record from Bhaskar Gowda, M.D. who noted Plaintiff's mental status examination was generally unremarkable, except he appeared depressed. Tr. 22-23, 329-32.

The ALJ also considered the consulting examination of Dr. Paul Rexroat who administered a psychological exam on May 16, 2016, and concluded Plaintiff exhibited: (1) an average range of intelligence; (2) mild limitations in his abilities to interact socially and adapt to his environment; (3) mild limitations in activities of daily living; (4) mild limitations in social functioning; and (5) an average range of functioning in concentration, persistence, pace, and memory. Tr. 355-59.

The ALJ cited to the report of an internist examination conducted on March 12, 2016, by Dr. Raymond Leung. Tr. 22, 337-40. Dr. Leung observed Plaintiff exhibited decreased range of motion, lower extremity weakness, and a significant limp. Dr. Leung noted Plaintiff's left leg was one centimeter shorter than the right. He opined Plaintiff was able to walk 50 feet unassisted, could squat halfway down, could not tandem walk, had difficulties hopping on his right leg, and could not hop on his left leg. Dr. Leung observed Plaintiff had no difficulties getting on and off the exam table. Dr. Leung noted Plaintiff's report of left-sided cluster headaches, but that he was not prescribed any medication for this complaint.

12

Based on a careful review of the record, the Court finds that the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence and is not conclusory. Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome. *Woolf v. Shalala,* 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir.1992)). Although the record reflects degenerative changes in Plaintiff's left hip and minimal spondylosis in his thoracic spine, Tr. 309-310, 351, it does not evidence any debilitating range of motion.

On January 23, 2013 and July 4, 2015, Plaintiff reported to the emergency room for dental issues and stomach pain, respectively. His range of motion in all four extremities was described as normal. Tr. 279, 291. On September 16, 2016, progress notes from Nurse Practitioner Tammy Watz described Plaintiff as walking with a limp but otherwise his extremities appeared normal, and his gait was described as grossly normal. Tr. 369. On December 30, 2016, Plaintiff described his pain as a 9 out of 10 to Dr. Oluseyl Ogundimu at the Advanced Pain Center, but treatment notes reflect that such pain was "not apparent in demeanor." Tr. 442. Dr. Ogundimu described Plaintiff's gait as "mild antalgic; regular stance," reported a normal cervical and thoracic spine examination; and described left hip tenderness in the groin area. Tr. 443. Records from the Advanced Pain Center consistently described Plaintiff's overall functioning in daily living as "fair." Tr. 444, 449, 453. On May 2, 2017, the Pain Management Clinic described Plaintiff to have a normal cervical spine, normal range of motion, and positive straight leg raise bilaterally. Tr. 393-99. These records and those cited by the ALJ, substantially supports the ALJ's RFC determination of light work with limitations.

The Court notes a claimant who can only stand for two hours of an eight-hour day is normally considered to be capable of sedentary work, rather than light work. SSR 83-10, 1983 WL 31251, at *5-6 (1983). However,

> SSR 83-10 specifically discusses the maximum standing and walking requirement per each exertional level of work. Here, the ALJ determined that Plaintiff was unable to perform the full or wide range of light work; she found that Plaintiff has the capacity to perform light work but with limitations. One such limitation was that Plaintiff can stand or walk *four* hours of an eight-hour workday. Regardless, courts from this circuit "have found that a two-hour standing or walking limitation is consistent with the definition of a reduced range of light work."

*Cain v. Berryhill*, No. 2:17-CV-00051-NCC, 2018 WL 4358258, at *4 (E.D. Mo. Sept. 13, 2018) (quoting *Torres v. Berryhill*, No. CV 15-4416 (JRT/TNL), 2017 WL 1194198, at *3 (D. Minn. Mar. 30, 2017)). Thus, the Court finds the ALJ's determination that Plaintiff is limited to standing or walking for two hours is consistent with the controlling regulatory definition for light work, with this limitation. The Court further notes that each of the potential occupations for Plaintiff which are cited by the ALJ are work performed at the sedentary exertional level. Tr. 29.

The Court cannot agree with Plaintiff's argument that the RFC was not consistent with Dr. Leung's report. Dr. Leung did not provide a written physical RFC statement. Instead, he summarized Plaintiff's history of pain and reported his observations of Plaintiff's limited range of motion, which included Plaintiff's difficulties in squatting more than halfway and hopping on one leg. The ALJ accounted for these observations in Plaintiff's RFC by limiting him to light work with simple, routine and repetitive tasks; a requirement that he be seated for six hours of an eight-hour work day; only occasional exposure to climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; no climbing of ladders, ropes or scaffolds; and avoidance of moving machinery, unprotected heights and hazardous machinery.

14

The Court also cannot agree with Plaintiff's argument that the record reflects a requirement that he elevate his legs throughout a workday, eliminating his ability to maintain gainful employment. Nowhere in the medical record is such a requirement. As previously discussed, there is only the one record from Nurse Practitioner Tammy Watz, dated February 27, 2018, which stated Plaintiff "*may* need to elevate his left leg intermittently due to swelling," but no other details are provided. Tr. 943.

Lastly, the ALJ did not err in his consideration of Plaintiff's successful completion of probation. An ALJ may consider a plaintiff's daily activities, subjective allegations, and any other evidence of record when developing the RFC as long as the RFC is based on some medical evidence. *See Hartmann*, No. 4:17-CV-002413-SPM, 2018 WL 4679737, at *6 (citing *Cox*, 495 F.3d at 619-20). The ALJ's RFC determination was based on some medical evidence and probation completion was only one factor. Plaintiff reported difficulty following directions, getting along with others, arguing with others, being angry and out of control. TR. 22, 24. The ALJ correctly noted his successful completion of probation in this context. To the extent Plaintiff argues the ALJ incorrectly determined that he "successfully" completed probation, the record reflects on May 2, 2017, Plaintiff would be finished with probation in four weeks. Tr. 585. On May 25, 2017, he was "doing everything right for probation." Tr. 599. On June 19, 2017, he was "off of probation officially." Tr. 611.

Thus, the Court finds the ALJ's RFC to be well-supported, specific, and not conclusory.

### C. Plaintiff's Subjective Complaints of Pain

Plaintiff argues the ALJ incorrectly afforded little weight to Plaintiff's subjective complaints of pain based on the fact he "stopped working at the same time he was charged with a felony." Plaintiff further argues that although he did work for over ten years after his car accident

15

with pain symptoms, the record shows his condition has gotten progressively worse with age. However, the only medical records dated prior to 2011 are the records related to the 1996 accident. The record contains no other medical records from 1996 until 2013. The only evidence as to why Plaintiff stopped working in 2012 is his own statements.

In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). The Court finds the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

The ALJ summarized Plaintiff's subjective physical complaints of pain, which included difficulties sitting for long periods of time because it bothered his back and hip, shooting pain in his neck which triggered headaches, and limitations on his ability to lift no more than twenty pounds or to stand for no more than sixty minutes at a time. Tr. 26. The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his pain symptoms were not entirely consistent with the medical evidence and, thus, afforded them little weight. *Id.* In

16

making this determination, the ALJ referred to imaging examinations which showed "modest degenerative changes to his spine, with no indication of weakness, sensory loss or reflex loss associated with these degenerative changes." Tr. 21, 344-54.

The ALJ also considered medical evidence showing Plaintiff did not consistently wear his shoe inserts to alleviate the one centimeter differential between his left and right leg; did not use heat, ice, or topical pain relief; did not require a cane or crutch for ambulation; and did not always take his medications in the prescribed manner. Tr. 22, 26. A review of the record reveals that Plaintiff often admitted to not taking his medication as directed. *See* Tr. 537-38, 717, 733, 734, 736, 738, 772, 837. A "failure to follow [a] recommended course of treatment [] weighs against a claimant's credibility." *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (*citing Gowell v. Apfel*, 242 F.3d 793, 797 (8th Cir. 2001)). *See also Wildman v. Astrue*, 596 F.3d 959, 968-69 (it is permissible for the ALJ to consider claimant's non-compliance with prescribed medical treatment). Dr. Leung notes Plaintiff claimed to be using a cane for ten out of every thirty days. However, this claim is contradicted by reports filed by Plaintiff and his mother, neither of which reported that he used a cane. Tr. 219, 227, 337. There is no other indication in the medical record that a doctor required him to use an assistive device for ambulation. The only reference to the use of crutches occurred when Plaintiff dropped a carjack on his foot. Tr. 634.

In addition to the medical record, the ALJ considered the fact that Plaintiff "worked for years after being injured," there was "no indication his condition was any different from his condition when he worked," and "he stopped working about the same time he was charged with a felony." Work history is one factor an ALJ may consider in evaluating subjective complaints. *See Finch*, 547 F.3d at 935; *Polaski*, 739 F.2d at 1322; *Gowell v. Apfel,* 242 F.3d 793, 798 (8th Cir. 2001) (finding it relevant to disability determination that claimant was able to work "for

17

years with her impairments.") As to the felony consideration, an ALJ may consider factors, other than mental or physical limitations. *See Creelman v. Berryhill*, No. 2:17-CV-00090-NCC, 2019 WL 1316951, at *7 (E.D. Mo. Mar. 22, 2019); *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) (ALJ can consider that claimant left work for reasons other than disability).

The ALJ also considered Plaintiff's activities of daily living, which included his ability to drive, clean, wash dishes, do laundry, prepare meals, play games, use the internet, handle his own medical care, care for pets, and shop. Tr. 23-26. In fact, Plaintiff reported he would live on his own if it were affordable and that he looked forward to receiving disability benefits so he could purchase a vehicle and move out of his parent's house. Tr. 24, 561, 757. A review of the record also shows Plaintiff reported fishing, walking with his girlfriend, "hiking a lot," visiting Meramec State Park for exercise, "going out exploring and looking at rocks," and helping his stepdad dig holes in gravel to build a shed. Tr. 553, 561, 613, 713, 570, 757, 761, 766, 809.

These activities in conjunction with Plaintiff's belief that he could live alone undermined Plaintiff's credibility and provided substantial support for the ALJ's decision when considered in combination with the other factors. *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility"); *Bernard v. Colvin*, 774 F.3d 482, 489 (8th Cir. 2014) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) ("'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'")); *Ponder v. Colvin*, 770 F.3d 1190, 1195 (8th Cir. 2014) (finding the plaintiff's reported ability to perform light housework, cook, do laundry, shop, watch television, drive, leave the house alone, and regularly attend church "undermines her

assertion of total disability.") Moreover, Plaintiff admitted to his treatment provider that he was not sure if his desire to "just lay around" was because "he is hurting or just no energy." Tr. 570.

Thus, the Court finds the ALJ's evaluation of Plaintiff's subjective complaints of pain is supported by substantial evidence in the record and the credibility determination should be upheld.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Shawn Arflack's Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

So Ordered this 14th day of December, 2020.

*/s/ Stephen R. Welby*
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**